**23-00189MB**

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION**

Your affiant, Homeland Security Investigations (HSI) Special Agent (SA) Maria Barallardos, being duly sworn, does depose and state the following:

**PURPOSE OF AFFIDAVIT AND IDENTIFICATION OF DEVICES**

This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination and extraction of electronically stored information from electronic devices associated to Juan Manuel SOTO-Guzman and Adulfo SOTO-Guzman which are currently in law enforcement possession.

The electronic device (Target Device 1 or TD 1) to be searched is:

a. One broken silver Kazuna Fukouka,

IMEI: 354834109387229, Telephone number: (424) 281-8070,

SERIAL: F0192001093286, No subscriber available

The electronic device (Target Device 2 or TD 2) to be searched is:

b. One broken black TCL 30 XE,

IMEI: 016062002829853, Telephone number: (602) 546-8076,

SERIAL: R9TT30QBMTV, Bairon AGUILAR

1

**23-00189MB**

The electronic device (Target Device 6 or TD 6) to be searched is:

      c.  One broken silver Kazuna Fukouka,

      IMEI: 354834106601499, Partial Telephone number: (480) 340-51XX,

      SERIAL: F0191907007887, No subscriber available

The electronic device (Target Device 7 or TD 7) to be searched is:

      d.    One broken red Samsung,

      IMEI: Unknown, Telephone number: Unknown,

      SERIAL: Unknown, No subscriber available

These devices are described in Attachment A and hereafter referred to as the "TD 1", "TD 2", "TD 6" and "TD 7". TD 1, TD 2, TD 6, and TD 7 are currently located at 2334 E Highway 80 Douglas, AZ 85607.

1. There is probable cause to believe that a search of TD 1, TD 2, TD 6, and TD 7 will lead to evidence of human smuggling violations under 8 U.S.C. § 1324 as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. The facts that establish the probable cause necessary for issuance of the Order are personally known to me, are contained in official government or business records I have reviewed; or have been told to me directly by other members of the investigative team, which includes federal, state, or local law enforcement officers with whom I

23-00189MB

have worked on this investigation.  As this affidavit is submitted for a limited purpose,

it does not contain all aspects of this investigation, but only sufficient information to

establish probable cause in support of the issuance of an Order for the examination of

TD 1, TD 2, TD 6, and TD 7.

## SUSPECTED VIOLATIONS

- Title 8 U.S.C. § 1324(a)(1)(A)(i) (Bringing in alien(s) at an Improper Time or Place)

- Title 8 U.S.C. § 1324(a)(1)(A)(ii) (Transporting an Illegal Alien in Furtherance of the aliens illegal presence in the United States)

- Title 8 U.S.C. § 1324(a)(1)(A)(iii) (Concealing, Harboring, or Shielding Illegal Aliens)

- Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy to Commit Alien Smuggling)

## TRAINING AND EXPERIENCE

3.  Your Affiant, Maria A. Barallardos, is employed as a Special Agent (SA) with the

Department of Homeland Security (DHS) Immigration and Customs Enforcement

(ICE), Homeland Security Investigations (HSI). Your Affiant is currently assigned to

the HSI Douglas, Arizona ("HSI Douglas") office. Prior to becoming a Special Agent,

your Affiant was employed as a United States Border Patrol (USBP) Agent from 2007

to 2019. As a USBP Agent your Affiant would detect, prevent, and apprehend

undocumented non-citizens, human smugglers, and interdict controlled substances

along the international border between the United States and Mexico. Your Affiant

3

**23-00189MB**

graduated from the Criminal Investigator Training Program and Homeland Security Special Agent Training at the Federal Law Enforcement Training Center in Glynco, GA. During this training, your Affiant received formal training in Titles 18, 19, 21, and 31 of the United States Code; criminal investigations; interview and interrogation techniques; laws pertaining to drug investigations; drug identification; money laundering investigations; search warrant procedures; confidential source management; undercover operation; and court preparation.

4.  The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

5.  The applied-for warrant would authorize the forensic examination of the TD 1, TD 2, TD 6, and TD 7 for the purpose of identifying electronically stored data particularly described in Attachment B.

23-00189MB

## STATEMENT OF PROBABLE CAUSE

6.  On Thursday, June 30, 2022, Special Agents (SAs) with Homeland Security Investigations (HSI) executed two simultaneous search warrants, 22-07401MB(JR) and 22-07402MB(JR), in Phoenix, Arizona.  SAs encountered undocumented non-citizens (UNCs) at both locations and also arrested Salvador LOPEZ-Vargas during the warrants.

7.  After arresting LOPEZ-Vargas SAs applied for warrants on cellular devices being used by LOPEZ-Vargas while actively engaged in human smuggling.  SAs executed search warrant 22-08562MB and found digital ledgers being sent from cell phone (602) 904-4158 to the phones searched in 22-08562MB.  The digital ledgers were in a format like ones you can create on Microsoft Excel Sheets.  The digital ledgers identify UNCs being smuggled, their Mexico based coordinator's name, their final location, final payment information, and the nicknames of drivers transporting the UNCs to their final destination within the United States.

8.  On September 28, 2022, SAs arrested Jose Manuel TELLEZ-Rodriguez in Phoenix, Arizona smuggling one unaccompanied juvenile. TELLEZ abandoned three cellular telephones found in the center console of the Honda Odyssey he was driving during the commission of this offense.  A search of one of the cellular telephones found in the Honda Odyssey yielded a conversation between TELLEZ and a contact named "Soqui". The conversation detailed payments and money being delivered to TELLEZ

23-00189MB

and being paid out to continue funding an ongoing enterprise in human smuggling. On September 21, 2022, "Soqui" forwards Moreño's contact information, once again revealing telephone number (424)281-8070. "Soqui" tells TELLEZ to give $10,000 USD to Moreño and to tell him the money is from "Monstro". "Soqui" also tells TELLEZ to let him know when he has delivered the money to Moreño.

9.  On November 16, 2022, Andres ZARATE was arrested by HSI on a Federal Warrant for human smuggling. ZARATE is a social media recruiter utilizing Snap Chat to recruit drivers for human smuggling. In a post Miranda interview ZARATE stated that he exclusively worked for CHUKI. ZARATE stated that he would turn over UNCs belonging to Chuki to and individual he knew as "Moreño". ZARATE said he would call Moreño directly when he had people to pick up from his drivers, and Moreño would send his people to a determined location to pick up the UNCs and pay ZARATE. ZARATE said he last dropped off UNCs to Moreño's people within the last week and a half. ZARATE stated he had only met MOREÑO a few times, but he was able to identify Juan Manuel SOTO-Guzman (Moreño) from a six-pack photo lineup. Analysis of ZARATE's cellular telephone showed (424)281-8070 as the most recent contact number for Moreño, which he contacted on November 7, 2022.

10. On February 7, 2023, SAs applied for and were granted a second Geolocate warrant on telephone number (424) 281-8070 under order 23-01422MB. Monitoring began on February 8, 2023, at 2:27 PM. Surveillance on the phone was conducted in conjunction

with ongoing physical surveillance and remote surveillance at Juan Manuel SOTO-Guzman's residence. During the surveillance period, SAs observed SOTO-Guzman driving approximately five different vehicles, one of which was on February 3, 2023. SOTO-Guzman was seen driving a 2013 black Honda Odyssey bearing Arizona license plate MAJ 025. A 90-day temporary permit was issued to a Mario Antonio MAYORGA-Ramires on October 21, 2022, with an address located at the La Estrella Vista Apartments. A permanent registration was issued for the same vehicle on October 31, 2022, to Jose Antonio ESTUDILLO-Conde, with an address of 2206 W Tonto Street, Phoenix, Arizona. Neither MAYORGA-Ramires or ESTUDILLO-Conde have drivers' licenses on record in the State of Arizona which may be indicative they may not have legal status in the United States. These registrations do indicate the vehicle being fictitiously registered.

11. Soon after observing the black Honda Odyssey, SAs placed an alert on the vehicle and shared the information with Intel Border Patrol Agents (I-BPAs) to attempt to locate the vehicle traveling into the interior of the United States as your affiant believed the black Honda Odyssey would be used to transport UNCs out of Arizona. On Friday, February 17, 2023, the black Honda Odyssey was observed by a license plate reader traveling east on Interstate 40 at approximately 12:46 AM. An I-BPA working at that time alerted a Clark County Sheriff's Deputy (CCSD), working in Springfield, Ohio, that the vehicle may be passing through Ohio.

12. At approximately 7 AM on February 18, 2023, SAs received a phone call from the CCSD requesting additional information on the black Honda Odyssey. SAs explained the surveillance previously conducted by SAs, including information on Juan Manuel SOTO-Guzman, his nickname as "Moreño", the (424) 281-8070 phone number and what to search for if the CCSD was able to develop his own probable cause for a stop.

13. At 11:27 AM Eastern Standard Time (EST), 9:27 AM Mountain Standard Time (MST), the CCSD performed a traffic stop on the black Honda Odyssey on Interstate 70 in Springfield, Ohio. The CCSD stopped the vehicle due to a vanity plate obstructing the license plate. The driver of the vehicle was identified as MAYORGA-Ramires. MAYORGA-Ramires was found transporting five individuals with Mexico Voter Cards. None of the occupants of the vehicle had legal permission to be in the United States.

14. MAYORGA-Ramires consented to a search of his cell phone and the CCSD found a contact name listed as "More" with the Target Cellular Telephone. The messages under "More" contained digital Excel type ledgers similar to the ones found being sent to LOPEZ-Vargas during his arrest on June 30, 2022. There was also an audio recording sent by "More" believed by SAs to be the same voice as Juan Manuel SOTO-Guzman. One ledger was from an event on January 23, 2023, and the second ledger on February 16, 2023. The February 16, 2023, ledger matched all five UNCs being transported by MAYORGA-Ramires. Additionally, there were four other individuals

on the ledger with destinations listed for Michigan and Indiana that could have been dropped off prior to the traffic stop.   MAYORGA-Ramires also admitted to CCSD that he was being paid $300 USD per person to transport the UNCs to their final destinations.  Deputies found fresh tooling marks on various compartments of the van and a newly installed aftermarket air bag suspension.  MAYORGA-Ramires told CCSD the airbags were installed by a mechanic to help avoid detection by law enforcement and Border Patrol while smuggling people across the United States. MAYORGA-Ramires was issued a warning and released on his way with the other five UNCs.

15.   Criminal Analyst (CA) Jason Whaley issued a subpoena to T-Mobile for subscriber information and tolls for the Target Cellular Telephone.  Verizon returned telephone number (602) 546-8076 which the subscriber is listed as Bairon AGUILAR. Typically, these phones are prepaid with no subscriber information collected or they are fictitiously registered.

16.   On February 21, 2023, SAs applied for and were granted a second Geolocate warrant on telephone number (602) 546-8076 under order 23-08558MB. Monitoring began on February 21, 2023, at 11:53 PM. Surveillance on the phone was also conducted in conjunction with ongoing physical surveillance and remote surveillance at Juan Manuel SOTO-Guzman's residence. During the surveillance period, SAs observed the (602) 546-8076 telephone number at Juan Manuel SOTO-Guzman's residence

23-00189MB

overnight and watched as the telephone left with who was believed to be Juan Manuel SOTO-Guzman.

17. On February 23, 2023, SAs executed 23-07073MB(JR) and found Juan Manuel SOTO-Guzman and Adulfo SOTO-Guzman living at 13042 W. Windrose Drive, El Mirage, Arizona.  Upon executing the search warrant, Juan Manuel SOTO-Guzman and Adulfo SOTO-Guzman failed to comply with SAs demands to exit the residence. SAs were unable to breach the front door and had to breach the rear sliding glass door. During the breach and upon entering the residence, SAs observed lights on and movement in the master bedroom and bathroom. The master bathroom is adjoined to the master bedroom occupied by Juan Manuel SOTO-Guzman. Eventually, Adulfo SOTO-Guzman turned himself into SAs and was taken into custody. Juan Manuel SOTO-Guzman was later located hiding. Several minutes passed from the time that SAs originally knocked and announced their presence to when Juan Manuel and Adulfo were taken into custody.

18. SAs seized approximately 43 paper, notebook ledgers being maintained for human smuggling.  The paper, notebook ledgers were handwritten and showed the same structure, style and data as the digital ledgers being sent from (602) 904-4158 to LOPEZ-Vargas.  Additionally, SAs found over 40 cell phones throughout the residence. After the initial sweep, SAs placed a phone call to telephone numbers (424) 281-8070 and (602) 546-8076. Both were heard to be ringing under the master

bathroom vanity. TD 1, TD 6, and TD 7 were located hidden inside a tampon box inside a vanity in the master bathroom. TD 2 was located inside a dirty laundry hamper in the master bedroom along with a tablet. TD 1, TD 2, TD 6, and TD 7 were all found to be destroyed. Despite them being broken in half and/or cracked, the phones continued to ring for several hours throughout the time of search.

19.   Due to the nature and secrecy of this transnational criminal organization (TCO), your Affiant believed that through search of TD 1, TD 2, TD 6, and TD 7, SAs will be able to identify and link co-conspirators that worked with Juan Manuel SOTO-Guzman as well as Adulfo SOTO-Guzman. Your affiant also believes there will be evidence of digital ledgers created, saved, or sent from TD 1, TD 2, TD 6, and TD 7. TD 1, TD 2, TD 6, and TD 7 were seized and are currently in storage at 2334 E. Highway 0, Douglas, Arizona 85607. In your Affiant's training and experience, your Affiant knows TD 1, TD 2, TD 6, and TD 7 have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when TD 1, TD 2, TD 6, and TD 7 first came into the possession of the Homeland Security Investigations.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

20.   Based on my knowledge, training, and experience, I know that electronic devices such as TD 1, TD 2, TD6, and TD 7 can store information for long periods of time. Similarly, things that have been viewed on the electronic device via the Internet and

applications are also typically stored for long periods of time. This information can sometimes be recovered with forensic tools.

21. *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in this affidavit, but also forensic evidence that establishes how TD 1, TD 2, TD 6, and TD 7 were used, the purpose of its use, who used it, and when.   There is probable cause to believe that the following forensic electronic evidence might be found on TD 1, TD 2, TD 6, and TD 7:

a)   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)   Forensic evidence on an electronic device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can

12

be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of TD 1, TD 2, TD 6, and TD 7 consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the electronic device to human inspection to determine whether it is evidence described by the warrant.

23. *Manner of execution.*  Because this warrant seeks only permission to examine TD 1, TD 2, TD 6, and TD 7 which are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SUMMARY

24. Based on the foregoing factors, I believe that TD 1, TD 2, TD 6, and TD 7 were used to facilitate and further the smuggling of illegal aliens through the U.S. in violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii) and other federal statutes. Obtaining the electronically stored information from TD 1, TD 2, TD 6, and TD 5 is anticipated to yield additional evidence of a human smuggling conspiracy between Juan Manuel SOTO-Guzman, Adulfo SOTO-Guzman, LOPEZ-Vargas and other co-conspirators unknown to investigators.

25. Considering the ongoing investigation referred to in this affidavit, and the need to avoid any one of the adverse results enumerated in 18 U.S.C. § 2705(a)(2), it is further requested that this affidavit be filed *under seal* and that notice of the order be delayed for a period of 180 days.

I swear, under penalty of perjury, that the foregoing is true and correct.

MARIA A
BARALLARDOS    Digitally signed by MARIA A
BARALLARDOS
Date: 2023.03.17 14:03:41 -07'00'

Maria Barallardos
Special Agent
Homeland Security Investigations

Subscribed and sworn to telephonically this  17th   day of March, 2023.

Eric J. Markovich
United States Magistrate Judge

14

## ATTACHMENT A
*Property to be searched*

The property to be searched is:

        a.  One broken silver Kazuna Fukouka,

           IMEI: 354834109387229, Telephone number: (424) 281-8070,

           SERIAL: F019200109386, No subscriber available

           (hereafter Target Device 1 or TD 1)

TD 1 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.

 

       This warrant authorizes the forensic examination of TD 1 for the purpose of identifying the electronically stored information described in Attachment B.

23-00189MB

## **ATTACHMENT A**
*Property to be searched*

The property to be searched is:

      b.  One broken black TCL 30 XE,

    IMEI: 016062002829853, Telephone number: (602) 546-8076,

    SERIAL: R9TT30QBMTV, Subscriber: Bairon Aguilar

    (hereafter Target Device 2 or TD 2)

TD 2 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 2 for the purpose of identifying the electronically stored information described in Attachment B.

**23-00189MB**

## ATTACHMENT A
*Property to be searched*

The property to be searched is:

        c.  One broken silver Kazuna Fukouka,

     IMEI: 354150875303963, Partial Telephone number: (480) 340-51XX,

     SERIAL: 354834106601499, No subscriber available

     (hereafter Target Device 6 or TD 6)

TD 6 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 6 for the purpose of identifying the electronically stored information described in Attachment B.

23-00189MB

## ATTACHMENT A
*Property to be searched*

The property to be searched is:

        d.  One broken red Samsung,

        IMEI: Unknown, Telephone number: Unknown,

        SERIAL: Unknown, No subscriber available

        (hereafter Target Device 7 or TD 7)

TD 7 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 7 for the purpose of identifying the electronically stored information described in Attachment B.

18

ATTACHMENT B

DESCRIPTION OF ITEMS TO BE SEARCHED FOR

1.      Any records and information found within the digital contents of the broken silver Kazuna Fukouka, IMEI: 354834109387229, Telephone number: (424) 281-8070, containing SERIAL: F019200109386 (hereafter Target Device 1 or TD 1),  broken black TCL 30 XE, IMEI: 016062002829853, Telephone number: (602) 546-8076, SERIAL: R9TT30QBMYV, (hereafter Target Device 2 or TD 2), broken silver Kazuna Fakouka, IMEI: 354150875303963, Partial Telephone number: (480) 340-51XX, SERIAL: 354834106601499, (hereafter Target Device 6 or TD 6), and broken red Samsung, IMEI: Unknown, Telephone number: Unknown, SERIAL: Unknown, (hereafter Target Device 7 or TD 7) including:

   a.  all information related to the receipt, importation, transportation, transfer, possession of Undocumented non-citizens;

   b.  all information related to sponsors or sources of UNC's (including names, addresses, telephone numbers, locations, or any other identifying information);

   c.  all bank records, checks, credit card bills, account information, or other financial records;

   d.  all information regarding the receipt, transfer, possession, transportation, or use of UNC's smuggling proceeds;

   e.  any information recording schedule or travel;

   f.  evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

g.  evidence indicating how and when TD 1, TD 2, TD 6, and TD 7 were accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user;

h.  evidence indicating the user of TD 1, TD 2, TD 6, and TD 7's state of mind as it relates to the crime under investigation;

i.  evidence of the attachment to TD 1, TD 2, TD 6,  and TD 7 of another storage device or similar container for electronic evidence;

j.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from TD 1, TD 2, TD 6, and TD 7;

k.  evidence of the times TD 1, TD 2, TD 6, and TD 7 were used;

l.  passwords, encryption keys, and other access devices that may be necessary to access TD 1, TD 2, TD 6, and TD 7;

m.  documentation and manuals that may be necessary to access TD 1, TD 2, TD 6, and TD 7 or to conduct a forensic examination of TD 1, TD 2, TD 6, and TD 7;

n.  records of or information about Internet Protocol addresses used by TD1, TD 2, TD 3, and TD 7;

o.  records of or information about TD 1, TD 2, TD 6, and TD 7's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

q.  Google account information, including Gmail, and Google Cloud information found on these devices or accessed from these devices.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books,

**23-00189MB**

contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.